[Civ. No. 20959. Third Dist. Oct. 6, 1982.]

AMERICAN RIVER FLOOD CONTROL DISTRICT, Petitioner, v. EDGAR SAYRE, as Auditor-Controller, etc., et al., Respondents.

[Civ. No. 20966. Third Dist. Oct. 6, 1982.]

THE PEOPLE ex rel. DEPARTMENT OF WATER RESOURCES, Petitioner, v.
BOARD OF SUPERVISORS OF SACRAMENTO COUNTY et al., Respondents.

348

COUNSEL

Downey, Brand, Seymour & Rohwer, George Basye and James M. Day, Jr., for Petitioner in No. 20959.

George Deukmejian, Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Petitioner in No. 20966.

L. B. Elam, County Counsel, and Monte L. Fuller, Deputy County Counsel, for Respondents.

**Opinion**

**EVANS, Acting P. J.**—These two petitions (consolidated for disposition) for writs of mandate arise out of Sacramento County's (County) refusal to collect ad valorem special assessments on behalf of petitioners. For a number of years prior to July 1, 1978 (the effective date of art. XIII A of the Cal. Const.),[1] the County was required to and did collect special assessments utilized by petitioners for maintenance costs. The assessments were calculated as a percentage of the property values on the County's ad valorem roll. Following adoption of article XIII A, the County has not kept an ad valorem roll, but rather a roll predicated upon acquisition values, not current cash value. The County has refused to collect petitioners' ad valorem assessments, arguing the assessments as ordered would be invalid as they are not sufficiently proportional to benefits bestowed. We grant the petitions and order the County to collect as required by the pertinent statutes.

*Background*

In neither case is there a factual dispute.

The American River Flood Control District (District) is a state entity formed in 1927 under the American River Flood Control District Act (Stats. 1927, ch. 808, p. 1596, and amendments thereto, Deering's Wat.—Uncod. Acts (1970 ed.) Act 320, p. 99; hereafter Act). Its function is to provide for control and disposition of storm and flood waters in a prescribed district along the American River. (Act, § 2.) This district has been divided into 11 "zones of benefit," each zone bearing a percentage of the District's maintenance costs proportional to the benefit each receives. (Act, § 8.)

Under section 18 of the Act, the District is authorized to levy assessments on land in the district in order to pay for operation and

[1]Article XIII A was adopted June 6, 1978, with passage of Proposition 13.

maintenance. Section 17, subdivision (a), of the Act gives the District the option of collecting this assessment through the County of Sacramento. If the District chooses the County method, the county auditor is required to send the District a statement showing the total value of all land and improvements in the district, as well as the values in each zone. The values are to be ascertained from the County's assessment book for the year the request is made. The District then fixes a rate of assessment for property in each zone sufficient to meet its estimated costs. These rates are transmitted to the County, which collects the assessment at the same time and in the same manner as county taxes.

As previously noted, for a number of years before July 1, 1978, the District had availed itself of this assessment collection means. Since that date, the County has treated the assessment as an ad valorem property tax, and only paid the District its share of the one percent tax collected under article XIII A, section 1.[2]

In 1980, following the decision in *Solvang Mun. Improvement Dist.* v. *Board of Supervisors* (1980) 112 Cal.App.3d 545 [169 Cal.Rptr. 391], petitioner District felt authorized to resume collection of an assessment based on a county ad valorem roll. It sent the county auditor notice of its intent to levy based on the County's rolls, together with a table showing the rate of assessment in each zone. The County answered that it would not collect the assessments because in its opinion, the assessments would be in violation of article XIII A, section 1, subdivision (a), and void. The District filed this writ petition, noting it has nearly exhausted its reserves for maintenance.

The Department of Water Resources (Department) and the Reclamation Board (Board) are state agencies. Since the adoption in 1947 of

[2]Article XIII A, section 1, provides: "(a) The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties.

"(b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective."

the provisions now contained in chapter 4.5 of Water Code, division 6, part 6 (Wat. Code, §§ 12878-12878.45), both Department and Board have had authority to delineate as "Maintenance areas" any areas found to be benefited by maintenance of a flood control project. (Wat. Code, § 12878, subd. (g).) Maintenance areas 9, 10 and 11, have been delineated along certain parts of the Sacramento and American Rivers; however no zones of benefit have been established within any area.

Each year the Department is required to estimate the cost of operation and maintenance of each project unit for the next fiscal year. (§ 12878.27.) The estimates are fixed after notice and hearing (§§ 12878.28-12878.32); thereafter the Department must certify the amount required for each maintenance area to the county in which the area lies. (§ 12878.34.) The County is to levy an ad valorem assessment on the land within each maintenance area at a rate sufficient to raise the certified amounts. (§§ 12878.35, 12878.37.)

As in the case of the District, the County had levied and collected the certified amounts until July 1, 1978. In 1981, the Department certified estimates for the 1981-1982 fiscal year. The County answered that it would not levy the assessments for the reasons previously noted.

*Discussion*

The question is whether the County must collect the requested assessments. We hold it must. We think it plain that the statutes (1) authorize both petitioners to levy special assessments, (2) require the County to collect those assessments, and (3) require it to collect based on an ad valorem tax roll, or in the alternative to levy a special benefit assessment. Further, the adoption of California Constitution, article XIII A, does nothing to change this obligation of the County.

In *Solvang Mun. Improvement Dist.* v. *Board of Supervisors, supra*, 112 Cal.App.3d 545, the court articulately defined the characteristics of a special assessment: "... a special assessment, sometimes

described as a local assessment, is a charge imposed on particular real property for a local public improvement of direct benefit to that property, as for example a street improvement, lighting improvement, irrigation improvement, sewer connection, drainage improvement, or flood control improvement. The rationale of special assessment is that the assessed property has received a special benefit over and above that received by the general public. The general public should not be required to pay for special benefits for the few, and the few specially benefited should not be subsidized by the general public. (*Burnett* v. *Mayor etc. of Sacramento* (1859) 12 Cal. 76, 83-84.) The theory underlying special assessment is that the local improvement, such as the paving or lighting of a street, directly benefits and increases the value of adjacent real property.... Although a special assessment is imposed through the same mechanism used to finance the cost of local government, in reality it is a compulsory charge to recoup the cost of a public improvement made for the special benefit of particular property...[¶] ... In sum, a special assessment is a charge levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement...." (Pp. 552-554.)

The statutes in question call for just such an assessment. Section 18 of the Act is titled "Assessment to cover improvements and maintenance." It gives the District power "to levy an assessment upon the land and improvements in said district ... to pay the costs and expenses of maintaining, operating, extending and repairing any work or improvement of said district ...." It further provides that where, as here, the District has been divided into zones (under § 8, zones are required if "such division is necessary because of varying benefits to the property within the district, ...") the assessments are to be apportioned in accordance with those zones.[3]

[3]Section 18 reads: "Assessment to cover improvements and maintenance.

"After the first bond election in said district, at which bonds shall be authorized by the electors of said district, as herein provided, the board of trustees of said district shall have power, in any year, to levy an assessment upon the land and improvements in said district at the time and in the manner set forth in Section 17 hereof, to carry out any of the objects or purposes of this act, and to pay the costs and expenses of maintaining, operating, extending and repairing any work or improvement of said district

The thrust of the Water Code is the same. Section 12878, subdivision (g), defines a maintenance area as "described or delineated lands which are found by the board or department to be benefited by the maintenance and operation of a particular unit of a project." An area may be divided into zones when the benefit to the land within it is not uniform. (Wat. Code, § 12878.8.) The land within each area is conclusively presumed to be benefited by continued operation of the unit. (Wat. Code, § 12878.25.) Assessments are levied on land within the area to raise the amounts certified by the Department as required to meet the cost of operation and maintenance. (Wat. Code, §§ 12878.27, 12878.34, 12878.35.)

Article XIII A of the Constitution does not impinge upon petitioners' authority to levy special assessments, and the County concedes as much. The point has been made clear in *Solvang, supra*, 112 Cal.App.3d 545. There a municipal improvement district created a parking district and issued bonds to acquire three lots in the city for public parking purposes. The money to service and redeem the bonds was to be raised by special assessments on the benefited real property in the district. The assessments were to be levied annually by the County, according to assessed value and a system of zoning which increased assessed value for establishments with heavier traffic and less private parking. The indebtedness was incurred without voter approval.

Santa Barbara County refused to levy after adoption of article XIII A, contending section 1 made collection of the requested special assessments unconstitutional unless approved by the voters. The court

---

for the ensuing fiscal year, and said board of trustees shall have power to control and order the expenditures for said purposes of all revenue so derived; provided, that such total assessments levied under this section for any one year shall not exceed ten cents ($0.10) on each one hundred dollars ($100) of the total assessed valuation of the land and improvements in said district as said assessed valuation is shown on the last preceding assessment records for state and county purposes; provided, further, that such assessment shall be in addition to any assessment levied to meet the bonded indebtedness of said district and all interest thereon; provided, further, that if said district has been divided into zones, the taxes to be levied as provided in this section shall be apportioned in accordance with the zones established for the levying and collection of taxes to pay the principal and interest of the bonds of the district."

disagreed. Despite confusing language in section 1, it held that special assessments are outside the scope of the article. (112 Cal.App.3d at pp. 556-557.)

The County's duty to collect petitioners' special assessments is unequivocal. Under section 17, subdivision (a), of the Act, once the District has elected to collect through the County, "all assessments shall be made and taxes collected for such district by the county assessor and tax collector, . . ."[4] Under the Water Code, the County "*shall* annually, . . . levy on the land within the county and within the area, . . . an ad valorem assessment sufficient to raise the amount or amounts certified by the department." (Wat. Code, § 12878.35; italics added.)

[4]Section 17, subdivision (a) provides in relevant part: "The board of trustees may elect to avail itself of the assessment made by the assessor of the County of Sacramento and may take such assessment as the basis for district taxes and have its taxes collected by the county officials of such county; provided, the board of trustees shall declare its said election by resolution and file a certified copy of the same with the auditor of Sacramento County on or before the 1st day of August, and such board of trustees shall likewise file with such resolution a certified copy of the map or plat showing the zones and the percentages of the amount to be raised from each zone. Thereafter each year until otherwise provided by the board of trustees, *all assessments shall be made and taxes collected for such district by the county assessor and tax collector*, respectively, of said County of Sacramento. In such case, the auditor of such county must, on or before the 2nd Monday of August of each year, transmit to the board of trustees of the district a statement in writing showing the total value of all land and improvements within the district, which value shall be ascertained from the assessment book of such county for that year as equalized and corrected by the board of supervisors of said county; and which said statement shall also show the total value of all land and improvements in each of the said zones respectively.

". . . . . . . . . . . . . . . . . .

"In case the board of trustees shall so elect to avail itself of the assessment made by the assessor of the County of Sacramento, as hereinbefore provided, it shall, on or before the first weekday in September, or if such weekday falls upon a holiday, then upon the first business day thereafter, fix the rate of tax for each zone, and designate the number of cents upon each one hundred dollars ($100) using as a basis the value of land and improvements as it is assessed by the county assessor and returned to the board of trustees of the district by the county auditor as hereinabove provided, which rate of taxation shall be sufficient to raise the amount previously fixed by the board as hereinabove prescribed. Such acts by the board of trustees of the district shall constitute a valid assessment of the land and improvements and a valid levy of the tax so fixed. The board of trustees must immediately thereafter transmit to the county auditor a statement of the rate of taxes so fixed by said board for each zone into which the dis-

We have concluded that under both the Act and code, the County is required to collect the special assessments.

The Act took effect in 1927, and the relevant provisions of the Water Code in 1947. There can be no doubt that each originally contemplated levies based on ad valorem county rolls. That, acknowledges the County, is the kind of roll it kept until adoption of article XIII A. Language in each statute confirms that conclusion. Section 17, subdivision (a), of the Act provides that when the District has elected to avail itself of the County's assessment, the County must send the District a statement showing the value of all land and improvements within the district, "which value shall be ascertained from the assessment book of such county for that year as equalized and corrected by the board of supervisors of said county; . . ." For its part, the Water Code provides that the County is to levy ad valorem assessments (§ 12878.35); the assessments are to be computed on the County's assessment roll (§ 12878.37); and "[s]o far as applicable, all provisions of law relating to the equalization, levy, payment, and collection of county taxes shall apply to such assessments . . . ." (§ 12878.38.)

Further, we do not believe collection based on the County's acquisition value rolls can be valid. The former ad valorem rolls reflected relatively current market values of real property. The county assessor attempted to achieve an appraisal of all parcels every three years, which meant the roll did carry some valuations as old as three years. But the maximum disparities believed to exist were 25 percent to 30 percent. Assessments based on such rolls were reasonably well geared to the benefit bestowed.

Article XIII A introduced a quantum leap in assessment inequity; it requires that property acquired before 1975 be assessed at its full cash value as shown on the 1975-1976 tax roll, and that thereafter acquired

trict may be divided and the county auditor shall enter such rate upon the county tax roll. Such taxes so levied shall be collected at the same time and in the same manner as county taxes and when collected the net amount ascertained as hereinafter provided shall be paid to the treasurer of the district under the general requirements and penalties provided by law for the settlement of other taxes." (Italics added.)

property be assessed at its acquisition value. (Cal. Const., art. XIII A §§ 1 and 2.) As the stipulated facts show, this can yield disparities of 100 percent or more in the assessed values of like properties.[5] If the special assessment rates are applied to these values, the assessments will mirror the extreme disparities. Such disparities cannot be tolerated in a special assessment.

*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281], does not change our conclusion that the County may not levy based on an acquisition value roll. There the state Supreme Court upheld article XIII A in the face of many challenges, one that the article violated equal protection because it would result in discrimination between owners of similarly situated property. Noting that the latitude of discretion is wide in the classification of property for the purposes of taxation, the court observed that a system of taxation will be upheld if supported by a rational basis. (22 Cal.3d at p. 234.) The court found article XIII A's acquisition value approach to taxation reasonably supported in a theory that a property owner's annual taxes should bear some rational relationship to original cost. (*Id.*, at p. 235.)

Petitioners see the reasoning of *Amador Valley* as condoning assessments based on acquisition value rolls; they suggest that if property taxation based on such rolls satisfies equal protection, so must the levy of special assessments. *Amador Valley* has no relevance to this case; our concern is not with the equal protection clause, but with the statutes involved and how they are to be applied.

[5]Some examples: two comparable contiguous residential properties, one assessed at its 1975 value of $30,155, the other sold in 1980 and assessed at $82,500; two comparable residential properties in the same neighborhood, one assessed at its 1975 value of $41,921, the other sold in 1980 and assessed at $80,000; two comparable residential properties, same street and neighborhood, one assessed at its 1975 value of $40,912, the other sold in 1980 and assessed at $84,000; two comparable apartment houses, one assessed at its 1975 value of $106,200, the other sold in 1981 and assessed at $252,000.

Almost half the assessable properties on the County's roll for the 1981-1982 fiscal year are assessed at 1975 values; roughly 35 percent are assessed at 1979, 1980, or 1981 values; the rest at 1976, 1977, or 1978 values.

Thus far the discussion has focused on the County's collection based on an ad valorem roll. Pending resolution of this dispute, legislation was enacted amending Water Code sections 12878.25, 12878.26, 12878.39, and adding section 12878.40, and amending sections 8, 9, and 17 of the Act. The effect of the changes is to authorize the County to levy, *in lieu of* an assessment based on their ad valorem roll, a proportionate special benefit assessment. Water Code section 12878.40, as adopted September 7, 1982, provides in part, "(a) The Legislature hereby finds and declares that a county may face substantial expense in maintaining a roll or system which reflects both current values of property for purposes of ad valorem benefit assessments as well as the property values for general taxation mandated by Article XIII A of the California Constitution. The Legislature further finds and declares that a fair and proper benefit assessment for flood control purposes may be levied on the alternative basis of the use to which the benefited land in a maintenance area may be put.

"(b) The board of supervisors of the county may evaluate the costs of maintaining a system to determine benefits according to assessed valuation of land and improvements thereon pursuant to Section 12878.35. If the board of supervisors finds that these costs would be excessive relative to the amounts to be collected, it may, in lieu of an ad valorem benefit assessment, elect to levy a benefit assessment as set forth in this section sufficient to raise the amount or amounts certified by the department. Amounts raised pursuant to this section for transmittal to the department shall be in lieu of any apportionment of county property tax revenues to the support of the maintenance area pursuant to Chapter 6 (commencing with Section 95) of Part 0.5 of Division 1 of the Revenue and Taxation Code. The assessment authorized to be levied on each parcel under this section shall be based upon the parcel's proportionate benefit, expressed as a product of the degree of flood protection it receives, its size, and its capacity for being put to use, with respect to all other parcels in the maintenance area. . . ." Section 17, subdivision (b), of the Act contains a similar provision.

In summary, we conclude the statutes require the County to collect these special assessments based on an ad valorem roll, or to levy a spe-

cial benefit assessment; collection of special assessments based on the present acquisition value rolls cannot be valid.

A writ of mandate will issue directing the board of supervisors to levy and collect the special assessments sought by the petitioners. The assessments shall be levied pursuant to the provisions of Water Code section 12878.35, or as provided in section 12878.40, and pursuant to the Act, as amended September 7, 1982.

Blease, J., and Carr, J., concurred.