**ALVIN, LTD., et al., Appellants,**

**v.**

**UNITED STATES POSTAL SERVICE, Appellee.**

**Appeal No. 86–634.**

United States Court of Appeals, Federal Circuit.

April 14, 1987.

Keith D. Krakaur, Williams & Connolly, Washington, D.C., argued, for appellants. Raymond W. Bergan, Williams & Connolly, of Washington, D.C., was on the brief, for appellants.

Eva M. Plaza, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Helene M. Goldberg, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., is counsel of record.

Before DAVIS, Circuit Judge, BALDWIN, Senior Circuit Judge,* and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

The Postal Service Board of Contract Appeals ("Board" or "PSBCA") held that, subsequent to amendment to the California Constitution, Cal. Const. art. XIIIA (1978) (hereinafter "Proposition 13" or "Article XIIIA"), the United States Postal Service was not obligated to pay, under existing lease agreements, certain levies imposed by California taxing authorities. *Alvin, Ltd., et al.,* 85-3 B.C.A. (CCH) ¶ 18,216 (1985). We reverse.

### Background

The appellants are thirty limited partnerships[1] (collectively "Alvin") that own real property comprising postal facilities leased to the Postal Service in the state of California. The Postal Service entered into long-term leases for the properties starting in the 1950s, the most recent lease at issue having first been executed in 1974. Each lease agreement was in substantially the same form, provided by the Postal Service, and contained a Tax Clause Rider substantially as follows:

> The lessor shall present to the Government the general real estate tax bills of each taxing authority for taxes due and payable on the land and buildings hereby demised.... [T]he Government shall pay to the lessor, as additional rent due hereunder, the net amount of said taxes by check made payable to the lessor and the taxing authority issuing said tax bill....

In 1975 a definition of "general real estate taxes" was added to the Rider by the Postal Service, as

> taxes which are assessed on an ad valorem basis, ... without regard to benefit to the property, for the purpose of funding general governmental services.

No change in the lease terms accompanied this addition.

The Postal Service regulations include a definition of "special assessment" as follows:

> A levy on property to pay for one or more specified public improvements to the property or to the immediate area, as for road construction, sidewalks, street lights, etc. Usually calculated pro rata to street frontage occupied by the property or by some other physical measure.

85-3 B.C.A. (CCH) at 91,434.

Proposition 13, added to the California Constitution as Article XIIIA on June 6, 1978, provided that ad valorem taxes on real property shall not exceed 1% of the assessed value of the property. Neither party disputes that the result was the immediate reduction of community revenues from ad valorem real estate taxes. *Id.*

This was not, however, the end of many of the community services that had been supported by general real estate taxes. Communities invoked alternative revenue collection methods, variously entitled special assessments, service charges, and benefit assessments. As the Board found, these assessments and charges, collectively referred to as special assessments, were for designated services of "flood control, mosquito abatement, lighting, garbage, sewer, sanitation, ... water...." *Id.* It was not contested, and the Board found,

---

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

1. Alvin, Ltd., PSBCA No. 1155; Wall, Ltd., PSBCA No. 1156; Nighthawk, Ltd., PSBCA No. 1157; Turlock, Ltd., PSBCA No. 1158; Fremont, Ltd., PSBCA No. 1160; Arrowroot, Ltd., PSBCA No. 1161; Adams, Ltd., PSBCA No. 1162; Rice, Ltd., PSBCA No. 1163; S.B., Ltd., PSBCA No. 1164; Rose Bowl, Ltd., PSBCA No. 1165; Willow, Ltd., PSBCA No. 1166; Tulip IV, Ltd., PSBCA No. 1168; Shannon I, Ltd., PSBCA No. 1169; Plover, Ltd., PSBCA No. 1170; Plaza, Ltd., PSBCA No. 1171; Bolero, Ltd., PSBCA No. 1172; Menhadden, Ltd., PSBCA No. 1173; Canvas, Ltd., PSBCA No. 1174; Canyon, Ltd., PSBCA No. 1175; No. Hollywood, Ltd., PSBCA No. 1176; Lapwing, Ltd., PSBCA No. 1177; Poplin, Ltd., PSBCA No. 1178; Lewis, Ltd., PSBCA No. 1179; Basil, Ltd., PSBCA No. 1180; Parrot, Ltd., PSBCA No. 1181; Darter, Ltd., PSBCA No. 1182; Burbank, Ltd., PSBCA No. 1183; Griffith Park, Ltd., PSBCA No. 1184; Artesia, Ltd., PSBCA No. 1185; and Castor, Ltd., PSBCA No. 1186.

that "[m]any of the governmental services presently funded by special assessments were funded by general real estate taxes before Proposition 13. Thus, it was not the use of the funds that changed, but the basis on which they were assessed." *Id.*

For the tax years 1978 to 1981 the Postal Service paid the reduced general real estate taxes and some of the new special assessments levied against the leasehold properties, payment the Board held to be a "mistake". *Id.* at 91,433, 91,434. After 1981 the Postal Service refused to pay anything other than taxes denominated "general real estate taxes" and assessed on an ad valorem basis, pointing to the letter of the lease agreements. It was stipulated that as a result the Postal Service's lease costs decreased, with corresponding increases in costs to the lessors.

The Board found that, as a matter of contractual intent at the time the leaseholds were entered into, "the parties expected the lessors' costs to be stabilized ... with respect to assessments for government services funded through general real estate taxes". *Id.* at 91,436. The Board concluded, however, that the changes in tax structure upon enactment of Proposition 13 did not overcome the long-standing policy of the Postal Service not to pay special assessments. *Id.* The Board found that Alvin

> assum[ed] ... the risk that a third party—the state or local governments—would change the method through which revenues were raised. Therefore, while Respondent [Postal Service] bore the risk of increases in general real estate taxes, Appellant assumed the risk that its obligation for other revenue raising devices would be increased.

*Id.* at 91,436–437.

The Board declined to decide whether the new assessments and charges had the characteristics of general real estate taxes, and thus lacked the characteristics of traditional special assessments and service charges, reasoning that such a finding "would *of necessity* conclude that the assessments violated the 1% limit on general real estate taxes imposed by Article XIIIA" (emphasis

added), and that "[t]his Board is not the appropriate forum for resolution of such a controversy." *Id.* at 91,435.

Alvin appeals the decision of the PSBCA pursuant to 41 U.S.C. § 607(g)(1)(A).

## Analysis

■ Appellate review is governed by 41 U.S.C. § 609(b):

> In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 607 of this title, notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

Contract interpretation is a question of law, and thus the Board's interpretation is not final, although it is afforded careful consideration and great respect. *George Hyman Construction Co. v. United States*, 564 F.2d 939, 944, 215 Ct.Cl. 70 (1977).

### A.

■ The government enters into contracts as does a private person, and its contracts are governed by the common law. *Torncello v. United States*, 681 F.2d 756, 762, 231 Ct.Cl. 20 (1982). *See also Prudential Insurance Company of America v. United States*, 801 F.2d 1295, 1298 (Fed. Cir.1986). The parties are presumed to have entered into a valid and binding contract. *Id.* at 761; *see also* Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning ... is preferred"); *Hobbs v. McLean*, 117 U.S. 567, 576, 6 S.Ct. 870, 874, 29 L.Ed. 940 (1886).

Alvin asserts that the case at bar is solely a matter of implementing the intention of the parties to a contract, and that despite the unforeseen enactment of Propo-

sition 13, the original and mutual intention has not been challenged. Alvin contends that it was the "shift between forms of taxation, where the revenues continue to be used for traditional services of general benefit to the community, that has created the controversy in this case." The Postal Service counters that the Board was correct in recognizing the "well-established" distinction between a general tax and a special assessment, and that a taxing entity cannot change the contractual agreement of the parties. Neither side has sought rescission nor has argued that the leasehold contracts are not enforceable. Similarly, neither side disputes that the contractual obligations contemplated in the Tax Clause Riders were fulfilled prior to Proposition 13. The issue is the fulfillment of those same obligations after enactment of the California constitutional amendment.

■ In resolving a disputed interpretation of a contract,

[w]ords and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is acertainable it is given great weight.

Restatement (Second) of Contracts § 202(1). Indeed, "[i]n the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intention of the parties." 4 S. Williston, A Treatise on the Law of Contracts § 601 (3d ed. 1961), *quoted with approval in Dynamics Corp. of America v. United States*, 389 F.2d 424, 429, 182 Ct.Cl. 62 (1968). *See also* Restatement (Second) of Contracts § 202 comment b. The Board treated the question of contractual intent solely as whether the Postal Service intended to pay for levies denominated "special assessments", whatever their genesis or scope, and held that the Postal Service did not. Therein lies its error. The dispute arises not out of the circumstances at the time of formation of these contracts, but out of a change in state law enacted up to 25 years later. In ascertaining whether such a change may be accommodated, the original intention of the parties must be considered.

"The parties' intent must be gathered from the instrument as a whole", *Kenneth Reed Construction Corp. v. United States*, 475 F.2d 583, 586, 201 Ct.Cl. 282 (1973), from the perspective of "a reasonably intelligent person acquainted with the contemporary circumstances". *Firestone Tire & Rubber Co. v. United States*, 444 F.2d 547, 551, 195 Ct.Cl. 21 (1971). *See also* Restatement (Second) of Contracts § 202(1). The Board found that the Tax Clause Riders were included in the leases "for the purpose of stabilizing the lessors' costs for property taxes, as property taxes had begun to escalate in many parts of the country and lessors were apprehensive about including a fixed amount for taxes in bids". 85–3 B.C.A. (CCH) at 91,433. The Postal Service now argues that Alvin should have foreseen Proposition 13 and its possible effect on the leases, asserting that "special assessments" were a well-known revenue raising alternative in California. Nevertheless, the Postal Service offered no evidence of contemporaneous recognition that such a dramatic change in tax structure was a reasonable possibility.

Neither party disputes that at the time these contracts were entered into, general real estate taxes funded "general governmental services", as stated in the Tax Clause Rider. In contrast, special assessments were for specified improvements to the property assessed. As found by the Board, the governmental services at issue, now nominally funded by special assessments, were funded by general real estate taxes before Proposition 13. *Id.* at 91,436. Indeed, the Board found that "it was not the use of the funds that changed, but the basis on which they were assessed." *Id.* at 91,434.

Alvin asserted without apparent contradiction that the total levies before and after enactment of Proposition 13 remained basically unchanged, in that taxes designated as special assessments appeared on its tax bills for the same services previously funded by ad valorem real estate taxes. Further, it was uncontroverted that the new assessments are collected at the same time and in the same manner as the ad valorem real estate taxes, operate similarly as a tax

lien, and apply to all or substantially all of the property within a local jurisdiction. We conclude that the Board erred in construing the Postal Service's "long standing policy" distinguishing special assessments from general real estate taxes and the contractual provision "only for payment of general real estate taxes", *id.* at 91,436, as determinative of the Postal Service's obligation to pay the successor taxes now termed special assessments.

■ The Postal Service does not dispute that during the years prior to the enactment of Proposition 13, it paid all the assessed taxes to support the same services that it now denies. From 1978 through 1981 the Postal Service continued to pay for at least some of these successor assessments, conduct that Alvin argues is evidence of the original intent of the parties and a recognition by the Postal Service of its continuing obligations despite the change in designation. One may not ignore the interpretation and performance of a contract, whether termed "mistake" or not, before a dispute arises. As in *Macke Co. v. United States,* 467 F.2d 1323, 1325, 199 Ct.Cl. 552 (1972), we discern an "excellent specimen of the truism that how the parties act under the arrangement, before the advent of controversy, is often more revealing than the dry language of the written agreement by itself." Alvin's position as to the parties' original intent is supported by the Postal Service's past and continuing conduct considered in light of the surrounding circumstances.

In accord with this result is *Burdman v. United States Postal Service,* No. C77-113–Y (N.D.Ohio Dec. 17, 1979), *reconsideration denied,* (N.D.Ohio Apr. 22, 1981), which held that the term "general real estate taxes" in a Postal Service lease such as that before us was "ambiguous", referring to the possibility of varying interpretations of the term, and the fact that the Postal Service had been paying the "fire service charges" for seven years under the general real estate tax clause. The court refused to interpret that clause so as to relieve the Postal Service of this obligation.

The Board stated that *Burdman* was distinguishable from the case at bar, 85–3 B.C.A. (CCH) at 91,436, but we think that the reasoning in *Burdman* that the "tax" was assessed on all property within the city, and that Postal Service liability for such levies was manifestly the intent of the parties, is equally apt in the present case. The Board preferred to rely on *Gosser v. United States,* CV 82–6698–WMB (C.D.Cal. Apr. 19, 1984), which relieved the Postal Service of liability for certain special assessment levies for the reason that such charges resulted in enhanced value of the property. It does not appear that the court in *Gosser* found, as did the Board with respect to Alvin, that the disputed levies funded the same community services that had previously been supported by general real estate taxes.

The Board found that the new assessments against Alvin succeeded the levies that the parties intended would be borne by the Postal Service and not by the lessors. These levies continue to fund general governmental services, and have the same relationship to the lessors' property as did the levies they replaced.

■ We conclude that the Postal Service's undertaking to pay general real estate taxes requires the payment of those levies that succeeded the general real estate taxes, however these successor taxes are denominated. Such payment reinstates the original bargain, as it was understood by both the Postal Service and the lessors. Justice Holmes said that "Men must turn square corners when they deal with the Government." *Rock Island, Arkansas & Louisiana Railroad Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). In holding the Postal Service to its obligations, we agree with Justice Jackson's response that "there is no reason why the square corners should constitute a one-way street." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 388, 68 S.Ct. 1, 5, 92 L.Ed. 10 (1947) (Jackson, J., dissenting).

### B.

The Board stated that it could not consider whether the subject assessments are

"actually general real estate taxes in the guise of special assessments" because this is a matter of California law. 85–3 B.C.A. (CCH) at 91,435. However, this question was not at issue. Before the Board were the mutual obligations of the parties under federal contract law.

The California courts have addressed various issues arising out of the implementation of Proposition 13, as the Board recognized. *Id. See, e.g., City of San Jose v. South,* 146 Cal.App.3d 320, 194 Cal.Rptr. 110 (1983); *American River Flood Control District v. Sayre,* 136 Cal.App.3d 347, 186 Cal.Rptr. 202 (1982); *City and County of San Francisco v. Farrell,* 32 Cal.3d 47, 648 P.2d 935, 184 Cal.Rptr. 713 (1982); *Solvang Municipal Improvement District v. Board of Supervisors,* 112 Cal.App.3d 545, 169 Cal.Rptr. 391 (1980). These local issues and their resolution are not pertinent to the issue before us, which is solely the contractual relationship between the Postal Service and the lessors, parties to this suit. We remark, nevertheless, that these California rulings have upheld the authority of communities to levy the type of charges here debated, without violation of Article XIIIA, while continuing to preserve the distinction between such assessments and those that have traditionally been recognized as benefitting a particular property, *see Solvang, supra.* Neither the Board's decision nor our reversal thereof carries any portent for California law.

A basic predicate to the agreement between the contracting parties was the expected continuation of the general system of taxation on real property. Article XIIIA made illegal a significant portion of that preexisting system and thereby vitiated a significant basis for the real estate tax clause as comprehended by the parties before the constitutional amendment. As explained in the Restatement (Second) of Contracts § 201 comment c:

> To the extent that a mutual understanding is displaced by government regulation, ... [t]he objective ... is to carry out the understanding of the parties rather than to impose obligations on them contrary to their understanding: "the courts do not make a contract for

the parties." Ordinarily, therefore, the mutual understanding of the parties prevails even where the contractual term has been defined differently by statute or administrative regulation.

The Postal Service's proposed interpretation of the contracts negates the clear intent of the parties, as gleaned from consideration of the contractual obligations as a whole and preference for a reasonable meaning over one that achieves a "weird and whimsical result". *Arizona v. United States,* 575 F.2d 855, 863, 216 Ct.Cl. 221 (1978). We conclude that the Postal Service is liable under the leases for those assessments levied in lieu of general real estate taxes after enactment of Article XIIIA.

REVERSED.