**S.S. SILBERBLATT INC. and Oakland Associates, Appellants,**

**v.**

**The UNITED STATES, Appellee.**

**No. 89-1221.**

United States Court of Appeals, Federal Circuit.

Oct. 31, 1989.

[redacted]

[redacted]

**830**

Douglas P. Null, of Douglas P. Null, P.C., Westbury, N.Y., argued for appellants.

Cheryl S. Rome, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. With her on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Norman D. Menegat, U.S. Postal Service, Washington, D.C., of counsel.

Before NIES, Circuit Judge,
BALDWIN, Senior Circuit Judge, and
MICHEL, Circuit Judge.

MICHEL, Circuit Judge.

S.S. Silberblatt Inc. and Oakland Associates (Silberblatt) appeal the decision of the Postal Service Board of Contract Appeals (Board) in *S.S. Silberblatt, Inc. & Oakland Associates*, PSBCA Nos. 1245, 1383, 1414; 89-1 BCA ¶ 21,268, that the government was not obligated to pay a business license tax assessment, paramedic services tax assessment, or vector control tax assessment under the terms of a tax clause rider contained in a lease agreement between the United States Postal Service and Silberblatt. We affirm.

## BACKGROUND

In 1966 Silberblatt entered into an agreement to lease a building to be constructed in Oakland, California, to the Postal Service. A tax clause rider was incorporated into the lease that provided in part that:

> [t]he lessor shall present to the Government the *general real estate tax bills* of each taxing authority for taxes due and payable on the land and buildings hereby demised.... [T]he Government shall pay to the lessor, as additional rent due hereunder, the net amount of said taxes by check made payable to the lessor and the taxing authority issuing said tax bill.

(emphasis added).

In 1978 Proposition 13 was added to the California Constitution providing that ad valorem taxes on real property could not exceed one percent of the property's assessed value. As a result, city revenues were decreased. Many taxing authorities responded by instituting alternative methods of generating revenue, such as through special assessments and service charges.

In 1978 the City of Oakland raised the Oakland Business Tax rate from $0.90 per thousand dollars on gross receipts from commercial rental income to $1.80 per thousand dollars. In 1981 Oakland raised the tax to $13.95 per thousand dollars. Additionally, starting with fiscal year 1984–85, Alameda County (which includes Oakland) made assessments for paramedic services and vector control on property, including that leased by the Postal Service.

The Postal Service refuses to pay all of these tax assessments, asserting that such taxes are not within their obligation under the tax rider clause in the contract with Silberblatt. The Board agreed. Although the Board found the intent of the tax rider clause was "to stabilize lessors' costs for real property taxes" to alleviate prospective lessors' apprehension about rising real property taxes, it concluded that none of these taxes fell within the contractual obligation of the Postal Service. *Silberblatt,* 89–1 BCA ¶ 21,268 at 107,227; 107,231.

Specifically, the Board found that the proceeds from the Oakland Business Tax were for "general governmental purposes" and that this tax was in existence and paid by Silberblatt before Proposition 13. *Id.* at 107, 228–29. Further, the Board found that in a letter to the City of Oakland protesting the business tax increase, Silberblatt had complained that it could not pass this cost on to its tenant, the Postal Service. The Board considered this evidence of Silberblatt's initial interpretation of the tax rider clause as probative of Silberblatt's original contracting intent. *Id.* at 107,229; 107,231.

The Board also noted that no evidence was presented that the paramedic and vector control services either existed or were funded in Alameda County prior to Proposition 13. In fact, these assessments were instituted five years after Proposition 13. *Id.* at 107,228. Based on these findings, the Board concluded these assessments were not "in lieu of ad valorem real estate taxes," and thus were not within the obligation of the Postal Service. *Id.* at 107,231.

Silberblatt's right of appeal as to the decision of the Board is established under 41 U.S.C. § 607(g)(1)(A) (1982).

## OPINION

■ Our standard of review is established by 41 U.S.C. § 609(b) (1982). The Board's conclusions as to contract interpretation are not final, but will be given "careful consideration and accorded great respect." *George Hyman Constr. Co. v. United States,* 564 F.2d 939, 944, 215 Ct.Cl.

70 (Ct.Cl.1977); *see also United States v. Boeing Co.,* 802 F.2d 1390, 1393 (Fed.Cir. 1986). The Board's decision on questions of fact, however, "shall be final and conclusive and shall not be set aside unless ... arbitrary, or capricious, or ... not supported by substantial evidence." 41 U.S.C. § 609(b) (1982); *see American Elec. Laboratories, Inc. v. United States,* 774 F.2d 1110, 1112 (Fed.Cir.1985).

### I.

■ The task of interpreting the tax rider clause contained in the Postal Service's lease agreements has previously been before this court. *See Alvin, Ltd. v. United States Postal Serv.,* 816 F.2d 1562 (Fed.Cir. 1987). *Alvin* specifically addressed the effect Proposition 13 had on the government's obligation under a contract containing a tax rider clause identical to the one contained in the lease agreement at issue in the instant appeal. In *Alvin,* this court noted that the basic premise of the contracting parties' mutual understanding as to the tax rider clause—that the same system of real property taxation would continue—was displaced by Proposition 13. *Id.* at 1567. Because of this event's occurrence, this court went on to state that ordinarily "the mutual understanding of the parties prevails even where the contractual term has been defined differently by statute or administrative regulation." *Id.* (quoting Restatement (Second) of Contracts § 201 comment c (1981)).

In the instant case, the mutual understanding of Silberblatt and the Postal Service as to the tax rider clause is identical to that of the parties in *Alvin.* As in *Alvin,* the Board found that the intent of the tax rider clause was to eliminate the lessors' risk of rising real property taxes so as "to stabilize lessors' costs for real property taxes." *Silberblatt,* 89–1 BCA ¶ 21,268 at 107,227. Moreover, the Board found no evidence to support Silberblatt's argument that the intended scope of this contract's tax rider clause was broader than that in *Alvin.* First, the Board found no evidence that the Postal Service represented it would cover *all* tax assessment increases

against Silberblatt, no matter what the name or nature of the tax. *Id.* Second, the Board found that Silberblatt's alleged "impression" as to the broader scope of the clause was not conveyed to the Postal Service at the time of contracting. *Id.* We conclude that neither of these findings is unsupported by substantial evidence or otherwise arbitrary or capricious. Thus, at best, a unilateral mistake occurred. However, the Postal Service did not know, nor should it have known, of Silberblatt's alleged mistake, and thus Silberblatt is bound by the unambiguous terms of the contract. *See Bromley Contracting Co. v. United States,* 794 F.2d 669, 671–72 (Fed. Cir.1986).

Consequently, the scope of the Postal Service's obligation, in light of the effects of Proposition 13, is the same as its obligation found in *Alvin:* The Postal Service is liable under the lease only "for those assessments levied *in lieu of* general real estate taxes" after the institution of Proposition 13. 816 F.2d at 1567 (emphasis added).

## II.

■ The Board properly found that the Postal Service is not obligated to pay the Oakland Business Tax because that tax is not "in lieu of general real estate taxes." The Board's conclusion is well reasoned, appropriately noting that this case lacks the strong indicia, found in *Alvin,* that the new taxes instituted were intended as direct *substitutes* for the prior general real estate tax scheme. The *Alvin* factors indicating a direct replacement of prior real property taxes included, inter alia, that: (1) the new assessments were collected at the same time and in the same manner as the previous ad valorem real estate taxes; and (2) the taxes under new titles had "the same relationship to the lessors' property as did the levies they replaced." 816 F.2d at 1565–66.

The Oakland Business Tax rate increase, which Silberblatt claims is a substitute for prior real estate taxes, is billed and collected separately from the real property taxes on the property at issue. *Silberblatt,* 89–1 BCA ¶ 21,268 at 107,229. More importantly, the business tax was in existence before the effective date of Proposition 13 and is based on gross receipts from rental of the property rather than the property's assessed value. *Id.* at 107,228. Accordingly, the Board properly found that the business tax should be characterized as a privilege or income tax as opposed to a real property tax. As such, the business tax does not share the same relationship to the leased property at issue as did the previous ad valorem real estate taxes assessed prior to Proposition 13.

Silberblatt asserts that the business tax rate increase is a substitute for real estate taxes by pointing to an Oakland City Council member's recommendation for the business tax increase stating "that the tax was not oppressive" and that "significant savings had accrued to commercial property owners as a result of the passage of Proposition 13." *Id.* at 107,228. Silberblatt additionally relies on the fact that the revenue generated from both the general real estate taxes and the Oakland Business Tax supports the same "general governmental" purposes. However, the Board noted that other forms of taxation were also enacted. *Id.* at 107,229. The Board properly considered all of this evidence and concluded it was not possible on the record of the case to determine that the *services* funded by the business tax rate increase had been funded by the ad valorem real estate taxes before Proposition 13 was instituted. This decision was neither arbitrary nor capricious nor unsupported by substantial evidence. Accordingly, we affirm the Board's conclusion that the Postal Service is not obligated to pay the Oakland Business Tax under its contract with Silberblatt.[1]

1. The Board's decision that the Postal Service is not obligated to pay the Oakland Business Tax is additionally bolstered by its finding that Silberblatt made statements that it could not pass this cost on to its tenant, the Postal Service. *Silberblatt,* 89–1 BCA ¶ 21,268 at 107,229. This evidence was considered by the Board in its determination of the scope of the Postal Service's obligation under the tax rider clause—a question of law because it involves contract interpretation. The Board considered this statement evidence of Silberblatt's original contracting in-

### III.

The Board also properly found that the Postal Service is not obligated to pay the paramedic and vector control service tax assessments because such assessments were not intended to be "in lieu of general real estate taxes." As in its analysis of the business tax, the Board concluded that this case lacked the strong evidence found in *Alvin* that the new assessments were intended as direct *substitutes* for the prior general real estate tax scheme. These new assessments do not support services which "had previously been supported by general real estate taxes," before Proposition 13, unlike those assessments at issue in *Alvin*. *See* 816 F.2d at 1566. No evidence was provided that the services funded by these assessments even existed prior to the enactment of Proposition 13. Indeed, the Board found that these assessments were not instituted until five years after the passage of Proposition 13. *Silberblatt*, 89-1 BCA ¶ 21,268 at 107,228.

What Silberblatt appears to be asking this court to do is expand *Alvin* so as to speculate whether, if these services—paramedic and vector control—had been funded prior to Proposition 13, they would have been funded through general real property taxes, and as a consequence would, under the logic of *Alvin*, fall within the Postal Service's contractual obligation. We decline, because to do so would require us either to engage in gross speculation or, effectively, to rewrite the tax rider clause to obligate the Postal Service to pay *all* tax increases incurred by Silberblatt, when it has already been determined that the true intent of the contracting parties was for most taxes to be paid by the landlord, Silberblatt. Here, as this court also required in *Alvin*, there must first be strong indicia that the new taxes were intended as direct *substitutes* for the prior general real estate taxes and that such taxes were instituted as a result of Proposition 13. In the instant case, the Board found that such indicia did not exist. We conclude that its

finding was neither arbitrary nor capricious nor unsupported by substantial evidence. We therefore affirm the Board's decision that the Postal Service is not obligated to pay the paramedic and vector control service assessments.

AFFIRMED.

---

tent not to place this type of tax burden on the Postal Service. We agree, and adopt the Board's conclusion that the tax rider clause was not intended to obligate the Postal Service to pay

taxes like the business tax. Accordingly, we consider this conclusion an additional basis for affirming that the Postal Service need not pay the Oakland Business Tax.