# United States Court of Appeals
# for the Federal Circuit

_____

**NOAA MARYLAND, LLC,**

*Appellant*

**v.**

**ADMINISTRATOR OF THE GENERAL SERVICES
ADMINISTRATION,**
*Appellee*

_____

2020-1548

_____

Appeal from the Civilian Board of Contract Appeals in Nos. 5269, 5659, Administrative Judge Catherine B. Hyatt, Administrative Judge Harold C. Kullberg, Administrative Judge Beverly M. Russell.

_____

Decided: May 13, 2021

_____

DIANA PARKS CURRAN, Curran Legal Services Group, Inc., Marietta, GA, argued for appellant. Also represented by HADEEL MASSEOUD, Atlanta, GA.

JOHN MCADAMS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.

————————————

Before MOORE, TARANTO, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

The Civilian Board of Contract Appeals held that two taxes imposed on the lessor of a building (NOAA Maryland, LLC) do not come within a lease provision that requires the General Services Administration (GSA), as lessee, to reimburse NOAA Maryland for "real estate taxes" NOAA Maryland must pay above a lease-set base amount. The Board interpreted the provision to exclude all "future" taxes, *i.e.*, taxes enacted after the date of the lease or its extension, even if those taxes meet the three expressly stated criteria for being a real estate tax. We reject the Board's interpretation, and because GSA has not preserved any argument that the two taxes at issue fail to meet those criteria, we reverse.

I

A

1

On September 2, 2005, GSA entered into a Lease for Real Property with Maryland Enterprise, LLC (NOAA Maryland's predecessor-in-interest) to lease a building in Prince George's County, Maryland from Maryland Enterprise for a term of 13 years. J.A. 22–25 (Lease). Under the Lease, GSA pays a specified annual rent, with payments made in monthly installments. J.A. 22. The rent includes an agreed-on amount for "[b]ase year taxes," *i.e.*, "an amount negotiated by the parties that reflects an agreed upon base for a fully assessed value of the property." J.A. 45 (§ 3.3(B)); *see* J.A. 117 (making clear that when a new tax base was negotiated, the annual rent, paid in monthly installments, rose by that amount). The Lease states that the original negotiated tax base was $711,900.00. J.A. 23 (§ 6(F)); *see also* J.A. 117.

The Lease provides, as relevant here, that in addition to the annual rent, GSA must compensate the lessor, through a "single annual lump sum payment," for "any increase in real estate taxes during the lease term over the amount established as the base year taxes." J.A. 45 (§ 3.3(E)). The Lease defines "real estate taxes":

> Real estate taxes, as referred to in this paragraph, are only those taxes, which are assessed against the building and/or the land upon which the building is located, without regard to benefit to the property, for the purpose of funding general Government services. Real estate taxes shall not include, without limitation, general and/or special assessments, business improvement district assessments, or any other present or future taxes or governmental charges that are imposed upon the Lessor or assessed against the building and/or the land upon which the building is located.

J.A. 45 (§ 3.3(A)). The Lease declares that GSA "shall pay its share of tax increases or shall receive its share of any tax decrease based on the ratio of the rentable square feet occupied by the Government to the total rentable square feet in the building or complex (percentage of occupancy)." J.A. 45 (§ 3.3(F)). For the "purpose of calculating future Tax Adjustments," the Lease identifies GSA as occupying 100% of the rentable area, which it says is 268,782 square feet. J.A. 23 (§ 6(F)).

In December, 2011, the original lessor assigned the Lease to NOAA Maryland, and on April 6, 2012, GSA and NOAA Maryland executed a Supplemental Lease Agreement. The agreement extended the term to April 5, 2025, slightly altered the annual rent, but, as relevant here, left "[a]ll other terms and conditions of the Lease . . . in force and in effect." J.A. 116. On January 15, 2014, the parties executed another supplemental agreement, effective April 6, 2013—Supplemental Lease Agreement No. 10 (SLA No.

10), which set a new ("revised") tax base of $1,387,574.20, an increase of $675,674.20 from "the original tax base of $711,900.00." J.A. 117. The increase in the tax base, plus an increase in an "Operating Cost Base," increased the annual rent. J.A. 117. "All other terms and conditions of the Lease," SLA No. 10 says, "shall remain in full force and effect." J.A. 117. The above-quoted provision on "real estate taxes" therefore still governs.

2

In 2016, NOAA Maryland asked GSA to reimburse it, under the Lease provision for reimbursing real estate taxes over the base amount, for four taxes it paid. The four are: (1) the Stormwater/Chesapeake Bay Water Quality tax (stormwater tax); (2) the Washington Suburban Transit Commission tax (transportation tax); (3) the Clean Water Act Fee (clean water tax); and (4) a Supplemental Education Tax (education tax). *See* J.A. 118–30, 162–67. All four appear as line items in the list of "taxes and fees" on the "consolidated tax bill for tax year" July 1, 2016, to June 30, 2017. J.A. 120; *see also* J.A. 119 (printout from county of "real property tax information" for fiscal year 2017). Of those four taxes, two—the clean water tax and education tax—remain in dispute on this appeal.

The clean water tax took effect in 2013. *See* J.A. 165. It is collected annually "from owners of property located within [Prince George's] County," Prince George's County Code § 10-302(a)(1), although property owners in the City of Bowie are exempt because the city has its own "approved stormwater management design," *id.* § 32-174(4). All proceeds from the tax are deposited into the Local Watershed Protection and Restoration Fund, *see id.* § 10-302(b), which is a fund used for multiple purposes related to stormwater management and wetland restoration, including capital improvements, public education and outreach, and operation and management of stormwater systems, *id.* § 10-303(a). The clean water tax is "collected in the same

manner as County real property taxes and [has] the same priority, rights, and bear[s] the same interest and penalties, and [is] enforced in the same manner as County real property taxes." *Id.* § 10-302(a)(6).

The education tax took effect in 2015. *See* J.A. 127, 165. It effected a "$0.15 increase in the county real property tax rate, from $0.96 to $1.11 per $100 of assessed value," with the increased revenue to be used for "the Prince George's County Public School System." S.B. 939, 2015 Leg., Reg. Sess. (Md. 2015).

## B

### 1

On January 25, 2016, NOAA Maryland submitted to GSA a claim for reimbursement for the four taxes listed above, asking for a final decision by a GSA contracting officer. On April 5, 2016, NOAA Maryland, deeming its claim denied (for lack of a timely final decision from the contracting officer), filed a notice of appeal to the Civilian Board of Contract Appeals (Board). On May 3, 2016, the Board directed GSA to issue a final decision on NOAA Maryland's claim, and GSA's contracting officer did so on May 31, 2016.

In her final decision, the contracting officer denied NOAA Maryland reimbursement for all four taxes, finding that none of them comes within the definition of "real estate taxes" set forth in the Lease. J.A. 163. She defined "[r]eal estate taxes" as those taxes that are: (1) "assessed against the building and/or the land upon which the building is located"; (2) "without regard to benefit to the property"; (3) "for the purpose of funding general Government services"; and (4) not a "future tax or governmental charge, special assessment, or [business improvement district] assessment." J.A. 163. Of central importance to the present appeal, the last component of the contracting officer's definition categorically excludes all "future" taxes from coverage by the "real estate taxes" provision of the Lease, even

if they meet the three stated criteria in the first sentence of the provision (the first three items in the contracting officer's definition).

With respect to the clean water tax, the contracting officer found that the amounts collected are "dedicated to [the] narrow purpose" of "addressing and mitigating the impact of stormwater runoff and improving water quality" and that the tax is "assessed at a flat rate" rather than on an ad valorem basis. J.A. 165. Moreover, the contracting officer reasoned, because the clean water tax became effective *after* the parties had renegotiated the tax base in 2013, it constitutes a "future" charge that cannot be a real estate tax under the Lease. J.A. 165. The contracting officer then found that the education tax likewise does not qualify as a "real estate tax" because the tax "came into effect well after the Lease was effective." J.A. 165–66. She also found that the tax does not qualify for an additional reason: "[T]he charges are not deposited into the general county revenue for funding general services," but instead "go[] directly to the county's school system." J.A. 166.

On October 27, 2016, NOAA Maryland submitted an updated claim for tax reimbursement, in the amount of $353,060.59. J.A. 185. When the prescribed period for a contracting-officer decision ended without a decision, NOAA Maryland deemed the new claim to have been denied. NOAA also filed a new notice of appeal to the Board, which the Board consolidated with NOAA Maryland's earlier notice of appeal.

2

Before the Board, NOAA Maryland argued that the Lease requires GSA to reimburse it for amounts paid for all real estate taxes above the agreed-on base-year amount, *i.e.*, for all taxes that are "assessed against the building and/or the land upon which the building is located, without regard to benefit to the property, [and] for the purpose of funding general Government services." CBCA Nos. 5269,

5659, Dkt. 67, at 2, 4 (May 31, 2019) (NOAA Post-Hearing Br.) (internal quotation marks omitted).  It contended that the Lease did not exclude all "future" taxes from GSA's real-estate-tax liability.  *Id*. at 7–8.  And it argued that all four taxes meet the definition of "real estate taxes" rather than being "special assessment[s]"; specifically, all four taxes fund general government services, are assessed against properties in Prince George's County, and are assessed without regard to benefit to specific properties.  *See id*. at 14, 16.

GSA advanced two bases for its contention that all four disputed taxes are not real estate taxes under the Lease: it asserted that all four are both "'special assessments' and, using the date of the Lease as a 'start point[,]' . . . 'future tax[es].'"  CBCA Nos. 5269, 5659, Dkt. 50, at 2 (July 13, 2018) (GSA Pre-Hearing Statement).  As to the first basis, GSA argued that none of the four taxes meet the Lease's definition of "real estate taxes" because the proceeds that the county collects from them "must be applied to *specific*, albeit governmental, services," rather than being deposited into Prince George's County's general fund, "unlike other taxes/fees/assessments."  CBCA Nos. 5269, 5659, Dkt. 68, at 1–2 (May 31, 2019) (GSA Post-Hearing Statement).  As to the second basis, GSA argued that the Lease "carves out any 'future' taxes from the tax adjustment clause."  GSA Pre-Hearing Statement at 10.

The Board issued a decision on October 31, 2019, ruling partly for and partly against NOAA Maryland.  J.A. 1–9; *see also NOAA Maryland, LLC v. Gen. Servs. Admin.*, CBCA 5269, 19-1 BCA ¶ 37458 (Oct. 31, 2019).  The Board first quoted the Lease provision, namely, § 3.3(A), and described the four taxes at issue.  J.A. 2–4.  The Board then discussed a variety of factors that courts have used to identify a "real estate tax," including whether the tax is an ad valorem real estate tax assessed in the same manner as other real estate taxes in the jurisdiction, whether the tax is a fixed amount, whether the tax is to be assessed every

year for an "'indefinite duration,'" whether the tax's proceeds benefit the "'general public'" rather than specific property owners, and whether the tax is "'used to augment the level of traditional governmental services.'" J.A. 5 (quoting *City Crescent Ltd. P'ship v. United States*, 71 Fed. Cl. 797, 804 (2006)).[1]

The Board went on to address the parties' arguments, dividing its discussion into two sections, one addressing the transportation and stormwater taxes, the other addressing the clean water and education taxes. In the first of those sections, the Board rejected GSA's argument, which GSA had made as to all four taxes, that § 3.3(A) "limits real estate taxes to those going into the county's general fund." J.A. 6. The Lease, the Board found, "does not contain this limitation but instead states that real estate taxes are those used for 'general Government services.'" J.A. 6. The Board then discussed the distinction between "real estate taxes" and "special assessments"—terms that appear, respectively, in the first and second sentences of the Lease provision at issue—and quoted the Supreme Court's explanation in *Illinois Central Railroad Co. v. City of Decatur*, 147 U.S. 190 (1893), that general taxes provide "'no return of special benefit'" to any specific property but, rather, "'secure[] to the citizen that general benefit which results from protection to his person and property,'" whereas special assessments "'proceed upon the theory that, when a local improvement enhances the value of neighboring property, that property should pay for the improvement.'" J.A. 6 (quoting *Illinois Central*, 147 U.S. at 197–98).

The Board applied the distinction and found the transportation and stormwater taxes to be "real estate taxes"

---

[1]    In *City Crescent*, unlike in the present case, the lease left "real estate taxes" undefined, necessitating an inquiry into whether a charge constituted a real estate tax or a special assessment. *See City Crescent*, 71 Fed. Cl. at 799.

under the Lease provision.  It noted that GSA "d[id] not dispute that public transportation and stormwater management are within the scope of general government services provided by the county," once GSA's argument about deposit in a general fund was put aside.  J.A. 6.  Both taxes, the Board found, are designated "property" taxes, are "assessed every year, and imposed for an indefinite duration," are imposed on an ad valorem basis, and are included on Prince George's County real estate tax bill.  J.A. 5–6.  The Board added that the stormwater and transportation taxes "predate the [L]ease" and thus neither tax constitutes a "'future tax[,]' which is excluded from those taxes for which GSA is obligated to pay."  J.A. 6.  For those reasons, the Board ruled that GSA must include the stormwater and transportation taxes in the calculation of the amounts (to be paid by GSA) by which "real estate taxes" increased over the base year amount.  J.A. 7; *see also* J.A. 45 (§ 3.3(E)).

The Board then ruled against NOAA Maryland on the clean water and education taxes, solely on the ground that they were "future" taxes.  It explained:

> The Board finds that the clean water tax, imposed in 2013, and the education tax, imposed in 2015, fall within the category of a 'future tax' under the [L]ease.  While 'future tax' is not defined within the [L]ease, this Board finds that the plain language of the [L]ease supports the understanding that it means a tax not contemplated at the time the parties entered into the lease.

J.A. 7.  The Board rested its conclusion on only that ground, having already rejected GSA's sole other argument for why these (and the other two) taxes fail to meet the Lease provision's criteria for being a real estate tax.  The Board construed the second sentence of the provision—real estate taxes shall not include, without limitation, "'general and/or special assessments, business improvement district assessments, or any other present or future taxes or

governmental charges' . . . assessed against the property or the land it sits on"—to mean that "at the time that the [L]ease was effectuated, no *other* taxes currently existing or assessed, other than real estate taxes, would be paid by GSA under the [L]ease; nor would any future taxes created and imposed after effectuation of the lease." J.A. 8. Because the clean water and education taxes were imposed after the Lease was effective and after the tax base was adjusted, the Board ruled, they were "future taxes" and GSA did not have to reimburse NOAA Maryland for them. J.A. 8.

NOAA Maryland timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## II

The Board's decision "on a question of law is not final or conclusive." 41 U.S.C. § 7107(b)(1). Contract interpretation is one such question of law, and while we carefully consider the Board's decision, we review de novo the ruling on contract interpretation where, as here, there are no factual disputes that affect the interpretation. *DG21, LLC v. Mabus*, 819 F.3d 1358, 1361 (Fed. Cir. 2016); *Rockies Express Pipeline LLC v. Salazar*, 730 F.3d 1330, 1335–36 (Fed. Cir. 2013).

The question presented on appeal is whether the second sentence of § 3.3(A) of the Lease excludes a tax from being a "real estate tax," even if the tax meets the three criteria stated in the first sentence, whenever the tax is a "future" tax, *i.e.*, was first imposed after the parties entered into the Lease (or its extension). The Board held that the second sentence has just that effect of derogating from the coverage that is defined by the first sentence. We reject that interpretation, concluding that the second sentence is properly understood as consistent with the first sentence and not excluding all "future" taxes. The Lease, in short, requires GSA to reimburse NOAA Maryland for all taxes (in excess of the agreed-on base amount) that meet the

three-part definition of a real estate tax, whenever imposed.

GSA presents no argument that even if the Lease requires it to pay future real estate taxes, the clean water and education taxes are not real estate taxes under the three-part definition in § 3.3(A). Accordingly, there is no issue for us to remand to the Board.

A

"Contract interpretation begins with the language of the written agreement." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). "'In contract interpretation, the plain and unambiguous meaning of a written agreement controls.'" *Hercules Inc. v. United States*, 292 F.3d 1378, 1380–81 (Fed. Cir. 2002) (quoting *Craft Mach. Works, Inc. v. United States*, 926 F.2d 1110, 1113 (Fed. Cir. 1991)). We must interpret a contract "'in a manner that gives meaning to all of its provisions and makes sense,'" *Langkamp v. United States*, 943 F.3d 1346, 1353 (Fed. Cir. 2019) (quoting *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)), and we seek to "'avoid[] conflict or surplusage of [the contract's] provisions,'" *United Int'l Investigative Servs. v. United States*, 109 F.3d 734, 737 (Fed. Cir. 1997) (quoting *Granite Constr. Co. v. United States*, 962 F.2d 998, 1003 (Fed. Cir. 1992)). *See also NVT Techs.*, 370 F.3d at 1159 (explaining that interpretations should "harmonize and give reasonable meaning" to all parts of the contract, rather than "leave[] a portion of the contract useless, inexplicable, void, or superfluous"). Contract provisions should not "be construed as being in conflict with [one] another unless no other reasonable interpretation is possible." *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 979 (Ct. Cl. 1965).

Here, the first sentence in § 3.3(A) of the Lease gives an express definition of "real estate taxes." It states: "Real estate taxes, as referred to this paragraph, are only those taxes, which are [1] assessed against the building and/or

land upon which the building is located, [2] without regard to benefit to the property, [3] for the purpose of funding general Government services." J.A. 45 (§ 3.3(A)). Notably, that sentence contains no temporal limitation. It does not restrict "real estate taxes" to *present* taxes that satisfy the three conditions or identify existing real estate taxes by citation; it sets forth a definition that covers any tax that meets all three generically stated criteria, without regard to when the tax comes into existence. Nor does it refer to the second sentence at all, much less signal that its definition is subject to or limited by that sentence. *Cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 13, at 126 (2012) (discussing subordinating language like "subject to").

The second sentence in § 3.3(A) of the Lease says: "Real estate taxes shall not include, without limitation, [a] general and/or special assessments, [b] business improvement district assessments, or [c] any other present or future taxes or governmental charges that are imposed upon the Lessor or assessed against the building and/or the land upon which the building is located." J.A. 45 (§ 3.3(A)). Significantly, the second sentence contains no "notwithstanding the foregoing," "provided, however, that," or similar language indicating that it is making an exception to, operating in even partial derogation of, or narrowing the coverage expressly specified in the immediately preceding sentence. *Cf. Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) ("The very first clause [of 11 U.S.C. § 546(e)]—'Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title'—. . . indicates that § 546(e) operates as an exception to the avoiding powers afforded to the trustee under the substantive avoidance provisions."); *see also* Scalia & Garner, *Reading Law* § 13, at 126 (discussing superordinating language, stating: "A dependent phrase that begins with *notwithstanding* indicates that the main clause that it introduces or follows derogates from the provision to which it refers."); *Smith v.*

*Davis Surgical Ctr., LLC*, 472 F. Supp. 2d 1316, 1318 (D. Utah 2006) (stating that the "natural" meaning of a contract was to treat the words "provided, however, that" as creating "a cap" on the purchase price, which was set at "fair market value"); *In re Williams*, 29 F. Cas. 1320, 1320 (C.C.D. Mass. 1842) (No. 17,701) (Story, J.) (treating "provided, however, that" as creating an "exception" from an otherwise-applicable general provision).

GSA reads the second sentence as derogating from, *i.e.*, as creating an exception to, the stated coverage of the first sentence. In GSA's view, the second sentence excludes any "future" tax from coverage as a real estate tax even if meets the first sentence's definition of "real estate taxes." But there is no language in the second sentence indicating such a withdrawal of just-stated coverage; nor is there language in the first sentence making it subject to an overriding coverage limit in the second sentence. In the absence of such language, the principle of construction that disfavors reading provisions as inconsistent with one another counsels against adopting GSA's reading. *See Hol-Gar*, 351 F.2d at 979–80; *see also SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305, 1322 (Fed. Cir. 2014) (rejecting the Board's interpretation of a contract that caused sections of the contract to be "in substantial tension" with one another); *LAI Servs., Inc. v. Gates*, 573 F.3d 1306, 1314–15 (Fed. Cir. 2009) (refusing to find ambiguity in a contract where "nothing in the plain language" of the contract imposed a "limitation" on an otherwise general provision).

The language of the second sentence does not, by its own words, contradict the full scope of the first sentence. In fact, the two sentences in the Lease fit together harmoniously in a familiar way. The first sentence states a definition of "real estate taxes." The second sentence then reinforces the three-part definition by clarifying, in a way consistent with the first sentence, what is not sufficient to meet that definition. This understanding of the two sentences "renders them compatible, not contradictory," and is

favored for that reason. *See* Scalia & Garner, *Reading Law* § 27, at 180, 182 ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously. . . .   The harmonious-reading canon is just as applicable to contracts as it is to statutes.").

Clause [a] refers to "general and/or special assessments."[2]  GSA has not broken out the "general" aspect in the phrase for discussion; it has not identified a separate meaning for "general . . . assessment" or suggested how it withdraws any coverage established by the first sentence. *See* GSA Response Br. at 14 (referring in passing to the entire phrase, as a unit, as one of the "specific varieties of taxes" excluded from coverage, without further elaboration).  The "special assessments" portion of clause [a] refers to impositions that fail to satisfy at least either condition [2] ("without regard to benefit to the property") or condition [3] ("for the purpose of funding general Government services") of the first sentence, as the Board made clear and the parties accept.  *See* J.A. 6 (discussing *Illinois Central*); *see also* GSA Response Br. at 13 n.4 (similar).  As far as the parties here have indicated, the "business improvement district assessments" of clause [b] are a species of "special assessments" and for that reason flunk some of the three first-sentence requirements.[3]    Finally, clause [c]—"any

---

[2]    Other cases have involved the same phrase or one nearly identical.  *See, e.g., ASP Denver, LLC v. General Servs. Admin.*, CBCA 2618, 15-1 BCA ¶ 35850 (Dec. 11, 2014); *see also McDonald's Corp. v. C.B. Mgmt. Co.*, 13 F. Supp. 2d 705, 707 (N.D. Ill. 1998); *MDJ Aviation, LLC v. Uniflight, LLC*, No. 4:19-cv-00321, 2020 WL 1939614, at *1 (N.D. Tex. Apr. 22, 2020); *Alexander v. Holden Bus. Forms, Inc.*, No. 4:08-CV-614, 2009 WL 3818149, at *4 (N.D. Tex. Nov. 16, 2009).

[3]    *See, e.g., Fed. Rsrv. Bank of St. Louis v. Metrocentre Improvement Dist. #1, City of Little Rock, Ark.*, 657 F.2d

*other* present or future taxes or governmental charges that are imposed upon the Lessor or assessed against the building and/or the land upon which the building is located," J.A. 45 (§ 3.3(A)) (emphasis added)—generalizes the point: A tax or government charge (present or future) is not a "real estate tax" if it is imposed on the lessor (and hence flunks the first sentence's condition [1] ("assessed against the building and/or the land upon which the building is located") or merely because it is assessed against the property (without meeting condition [2] and [3]).

The word "other" in the last clause supports this understanding of the second sentence and of its relation to the first.  The word suggests a commonality of theme among the three clauses of the second sentence—that clause [c] is a generalization of the specific examples of clauses [a] and [b]. *See Heien v. North Carolina*, 574 U.S. 54, 67–68 (2014) (explaining that "[t]he use of 'other'" in a North Carolina statute referring to both "'a stop lamp'" and "'other rear lamps'" "suggests to the everyday reader of English that a 'stop lamp' is a type of 'rear lamp'").[4]  It also suggests that

_____

183, 185–86 (8th Cir. 1981) (considering the nature of an assessment made by a "business improvement district"); *Bd. of Dirs. of Red River Levee Dist. No. 1 of Lafayette Cnty., Ark. v. Reconstruction Fin. Corp.*, 170 F.2d 430, 432 (8th Cir. 1948) (classifying a special tax as a "special improvement assessment").

[4]    *See also, e.g., United States v. United Verde Copper Co.*, 196 U.S. 207, 213–14 (1905) (interpreting "'building, agricultural, mining, or *other* domestic purposes'" to mean that "domestic" refers to activities "consistent with the intentional use of the word 'other'"—like agriculture and mining—rather than activities limited to a household (emphasis added)); *United States v. Palmer*, 16 U.S. (3 Wheat.) 610, 617, 627–28 (1818) (defining piracy and interpreting "other" in the phrase "'murder or robbery, or any other

what is common is that the subject of all three clauses differs from (is "other" than) what is defined in the first sentence. *See Potomac Elec. Power Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Labor*, 449 U.S. 268, 273–74 (1980) (holding that a statute that included a "compensation schedule" for "20 different specific injuries," as well as an "additional subparagraph" that applied to "'all other cases'" could not be read to apply the additional subparagraph of "other" cases to the enumerated injuries).

GSA reads clause [c] by breaking apart and reconstructing "any other present or future taxes or governmental charges" so that "any other" refers only to "present . . . taxes" but not to "future taxes or government charges," which in GSA's view should be read as standing unmodified by "any other." *See* GSA Response Br. at 14. That understanding is at best strained. The ordinary meaning here is also the simplest meaning: Both "any" and "other" modify all that comes after, namely, all the items in the broad phrase "present or future taxes or government charges" (in which "present or future" itself broadly modifies "taxes or governmental charges"), a "concise, integrated clause" that "'hangs together as a unified whole.'" *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) (quoting *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018)).

The meaning GSA urges would ordinarily be embodied in different language, *e.g.*, "any other present taxes or any future taxes or governmental charges." But the phrase as written in the Lease contains no second "any" or similar determiner after the initial "any other"; nor does it restate the object of "present" and "future" so as to distinguish

---

offence, which if committed within the body of a county, would by the law of the United States, be punishable with death'" as a word that "connects murder and robbery with the following member of the sentence").

them, let alone in a way that would restrict the scope of "other" to stop short of applying to "future taxes or government charges." The natural understanding of the phrase, as written, treats "present and future taxes or government charges" as a unit, with, in particular, no distinction between "present" and "future" as to the critical modifiers. And that treatment fits the absence of any temporal limitation in the first sentence, whose three-part definition of "real estate taxes" makes no distinction, among laws that meet the three criteria, based on date of enactment. The wording chosen would be a surprising way of making the distinction GSA urges.

Once GSA's argument for breaking up "present or future" is rejected, its overall construction must be rejected. If the phrase "present or future" were deleted from clause [c], the second sentence would make clear that "real estate taxes" do not include "any other . . . taxes or governmental charges that are imposed upon the Lessor or assessed against the building and/or the land upon which the building is located." That language, as GSA appeared to agree at oral argument, would clearly be using "other" to distinguish the larger class of taxes and governmental charges imposed on a lessor or the property from the particular subclass defined in the first sentence. Oral Arg. at 17:34–18:01. The addition of "present or future" merely confirms that the distinction is unaltered by the timing of the tax or government charge. It does not change the distinction, which itself is not temporally based.

For all of those reasons, we conclude that GSA's interpretation, adopted by the Board, is not the ordinary meaning of the second sentence. That conclusion means that, under ordinary interpretive principles, a real estate tax qualifies under the Lease provision whenever it satisfies the three criteria of the first sentence.

A final principle supports our adoption of that interpretation. Even if the language of the provision is not

unambiguous in its support for our interpretation, GSA's arguments get GSA at best to the point of indicating ambiguity of the provision. But any such ambiguity cannot help GSA, which drafted the Lease provision. "When a dispute arises as to the interpretation of a contract and the contractor's interpretation of the contract is reasonable, we apply the rule of *contra proferentem*, which requires that ambiguous or unclear terms that are subject to more than one reasonable interpretation be construed against the party who drafted the document." *Turner Constr. Co. v. United States*, 367 F.3d 1319, 1321 (Fed. Cir. 2004). GSA does not dispute the applicability of that rule if the provision is ambiguous as to the point in dispute. *See* GSA Response Br. at 26–28 (disputing that NOAA Maryland's reading of the contract language is reasonable but not disputing that the contract should be construed against GSA if the meaning of the language is deemed ambiguous). Here, even if the provision is thought to be ambiguous, our reading is at least a reasonable reading, and it therefore must be adopted.

GSA vigorously insists that reading the contract as subjecting it to liability for real estate taxes arising after the contract's formation is an "implausible" interpretation because it is not consistent with what the parties originally intended (namely, to limit GSA's tax liability in order to be "consistent with fundamental principles of government procurement practices to fairly procure goods and services in ways that safeguard the public fisc"). *Id.* at 21–24. In asserting what the parties' intent was, however, GSA provides no foundation for the assertion—most importantly, no textual foundation in the Lease. Here, as we have concluded, the language of the on-point provision, interpreted according to standard principles of construction, establishes a contract interpretation contrary to GSA's position. *See* Restatement (Second) of Contracts § 201 (Am. L. Inst. 1981) ("Unless a different intention is shown, language is

interpreted in accordance with its generally prevailing meaning.").

GSA also points to our decision in *S.S. Silberblatt Inc. v. United States*, 888 F.2d 829 (Fed. Cir. 1989). There, we considered a lease provision that referred to real estate taxes, with no further definition, let alone one like the explicit definition contained in the first sentence of the Lease provision here. *Id.* at 830. We applied our earlier interpretation of the same lease language as covering taxes adopted "'in lieu of general real estate taxes,'" as judged based on whether a tax was "collected at the same time and in the same manner as the previous ad valorem real estate taxes" and "had 'the same relationship to the lessors' property as did the levies they replaced.'" *Id.* at 832 (quoting *Alvin, Ltd. v. U.S. Postal Serv.*, 816 F.2d 1562, 1565–67 (Fed. Cir. 1987)). We held that a local imposition did not qualify, based on findings that it was "billed and collected separately from the real property taxes on the property at issue," was "based on gross receipts from rental of the property rather than the property's assessed value" (and so was "a privilege or income tax as opposed to a real property tax"), and, in fact, predated the state constitutional limitation on real estate taxes (which the lessor argued it was in lieu of). *Id.* That ruling did not exempt all "future" taxes from coverage of a "real estate tax" provision, much less a provision with the express definition found in the Lease here.

For these reasons, we hold that § 3.3(A) requires GSA to reimburse NOAA Maryland for amounts paid (above the agreed-on base amount) for all taxes that satisfy the three elements of a "real estate tax" as defined in the first sentence, regardless of when those taxes arise.

B

Having decided that the Lease requires GSA to reimburse NOAA Maryland for all taxes that meet the three criteria stated in Lease provision's first sentence, we must

decide whether to remand for the Board to consider whether the clean water and education taxes meet those criteria. GSA did not ask for a remand in the event we rejected the Board's "future taxes" interpretation. And we conclude that a remand is not warranted.

GSA has not "present[ed]" to us "as [an] alternative bas[i]s for affirmance" any argument that the clean water and education taxes fail to meet the three criteria. *Biafora v. United States*, 773 F.3d 1326, 1334 (Fed. Cir. 2014); Oral Arg. at 20:50–21:08. Moreover, the Board already rejected GSA's argument—made as to all four taxes at issue before the Board—that the "purpose of funding general Government services" criterion requires that the money collected go into the government's (here, county's) general fund. J.A. 6. The Board also concluded, as to the two taxes it found to come within the Lease provision, that "public transportation and stormwater management are within the scope of general government services," J.A. 6, a conclusion that readily applies to education and clean water. At oral argument here, GSA acknowledged that it has not challenged those conclusions, stating: "At the Board, the GSA argued that the two taxes that are at issue here were not for purposes of funding general government services. The Board rejected that position and we, the Department of Justice, did not seek the Solicitor General's concurrence to cross-appeal on that issue, so we are not arguing that here, Judge." *See* Oral Arg. at 21:32–22:01.

In these circumstances, we see no basis for a remand for consideration of a preserved argument, not already rejected by the Board, that the clean water and education taxes fail to meet one of the three criteria for being a real estate tax. GSA did not dispute that the two taxes are "assessed against the building and/or the land upon which the building is located" and that the taxes are imposed

"without regard to benefit to the property."[5]  As already noted, the Board has in substance already rejected GSA's arguments about the "purpose of funding general Government services."  *See* J.A. 6.  And GSA stressed to the Board that the facts in the case are "generally uncontested," that "discovery ha[d] uncovered little to nothing that should alter the Board's review of the plain language of the Lease," and that "the most apparent issues in [the case] are legal." GSA Pre-Hearing Statement at 1; *see also* GSA Post-Hearing Statement at 1 ("[T]he most apparent issues in these appeals are legal and have required little factual development.").  We see no sufficient basis for a remand.

We therefore conclude that the clean water and education taxes are within GSA's reimbursement obligation under the Lease.

### III

For the foregoing reasons, the decision of the Civilian Board of Contract Appeals is reversed.

**REVERSED**

---

[5]    With respect to the education tax, GSA focused on the fact that the tax is a "future" tax.  *See* GSA Pre-Hearing Statement at 10.  For the clean water tax, GSA argued that the revenue raised is explicitly excluded from contributing to the general county fund.  *See id.* at 4–5; GSA Post-Hearing Statement at 6 n.2.  GSA also pointed out that the clean water tax has certain characteristics that distinguish it from other real estate taxes, *e.g.*, the tax provides exemptions for property owners suffering financial hardship and also is imposed based on a property's impervious area. GSA Pre-Hearing Statement at 5.  GSA has not shown that those characteristics remove a tax from coverage under the Lease's three-part definition.